JOURNAL ENTRY and OPINION
A jury found the defendant Vernon Paul, Jr. guilty of having a weapon while under a disability, possession of drugs, preparation of drugs for sale, and possession of criminal tools. The defendant's fourteen assignments of error challenge errors that allegedly occurred at all phases of trial.
A Cleveland Metropolitan Housing Authority ("CMHA") undercover police officer received a call from an anonymous source who said that a man was selling drugs from a vehicle located on CMHA property. When the officer arrived at the location, he saw a man, later identified as the defendant, who matched the description of the alleged drug dealer. The officer watched for twenty or thirty minutes as several people walked up to the defendant. As they approached the defendant, the officer saw the defendant retrieve contraband from his sleeves and then receive money.
The officer called for backup. When assistance arrived, he and two other officers approached the defendant and other persons who were congregating near a small grocery store. They conducted a pat-down search of the defendant and the undercover officer noted that the defendant had his fist clenched. The undercover officer ordered the defendant to open his fist. When the defendant did so, he was holding a rock of crack cocaine. The police arrested the defendant and found $1,295 in cash on him. The police also found car keys that matched the car described in the initial call to the undercover officer, a cell phone and a pager. An inventory of the locked car yielded an unloaded .38 caliber firearm found under the front passenger seat. As the officers took the defendant away, he admitted to one of them that he "sold a couple of stones" — the word "stones" being street slang for crack cocaine.
The defendant did not testify, but his mother did and said that the defendant was carrying a large amount of cash because he had recently won $2,500 in the lottery. Her proof consisted of an Internal Revenue Service tax withholding statement for the winnings, but the form had her name on it. She explained that the defendant did not know how to play the lottery so she took the money from him and purchased a ticket for him.
Another defense witness testified that he saw the defendant park his car at the grocery store. A male identified only as "Rob" appeared and tried to sell the defense witness a .32 Smith and Wesson handgun. The defense witness identified the gun found in the defendant's car as the gun shown to him by Rob. Rob then tried to sell the handgun to the defendant, but the defendant refused the offer. Ever industrious, Rob offered to wash the defendant's car for a couple of dollars. The defendant agreed and the witness speculated that Rob must have left the handgun inside the car while cleaning the interior windows. The defense went on to say that he believed the police found the crack cocaine laying on the ground.
 I
The first assignment of error complains that the court erred by denying the defendant's motion to suppress evidence. The defendant offers three arguments: that the CMHA police lacked jurisdiction to arrest him on a public street; that there was no probable cause to conduct a pat-down; and the complaint from an unnamed informant was constitutionally inadequate.
 A
The defendant's first argument is that the CMHA police officers lacked jurisdiction to arrest him because he was within the territorial jurisdiction of the city of Cleveland at the time of arrest. The evidence showed that the defendant had been dealing drugs on CMHA property, but walked across the street into the city of Cleveland before being patted-down and subsequently arrested.
A member of a police force employed by a metropolitan housing authority shall arrest and detain, until a warrant can be obtained, a person who, within the territorial limits of the metropolitan housing authority, violates a law of the state. See R.C. 2935.03(A)(1). A metropolitan housing authority police officer is also authorized to make an extra-territorial arrest if (1) the pursuit takes place without unreasonable delay after the offense is committed, (2) the pursuit is initiated within the limits of the metropolitan housing authority, and (3) the offense involved is a felony or a misdemeanor of the first or second degree. See R.C. 2935.03(D).
Even if we were to accept the defendant's argument that his arrest occurred in the city of Cleveland, not on CMHA property, it would not form the basis for any relief. The exclusionary rule is only used to remedy violations of constitutional rights and not violations of state statutes. See Kettering v. Hollen (1980), 64 Ohio St.2d 232, 234-235. The courts have held that a violation of R.C. 2935.03(D) does not rise to the level of a constitutional violation, thus precluding the suppression of evidence for that reason. See State v. Riggenbach (1994),97 Ohio App.3d 661, 663; State v. Coppock (1995), 103 Ohio App.3d 405,412; State v. Bostwick (Feb. 24, 2000), Cuyahoga App. No. 75124, unreported. Even had the facts precluded application of R.C. 2935.03, the court could not have granted the motion to suppress on that ground.
We do not mean to suggest that the defendant made out a violation of R.C. 2935.03(D), as the facts presented at the suppression hearing were sufficiently probative to enable the court to deny the motion to suppress. There is no question that the drug offense involved a felony, nor is there any question that the undercover officer witnessed possible drug transactions occurring within CMHA territorial limits.
The remaining question, whether the pursuit took place within a reasonable time after the offense is also met under the facts of this case. The undercover officer testified that he conducted surveillance of the defendant's activities for twenty minutes before forming a suspicion that criminal activity was occurring. Because there were several people standing near the defendant, the undercover officer called for backup officers to assist him with a pat-down.
We view the surveillance and wait for backup assistance in conducting the pat-down to be reasonable under the circumstances. Police officers have a legitimate need to secure their own personal safety when reasonable under the circumstances, and the evidence showed that the defendant had walked into the city of Cleveland and began standing with a group of men who had gathered in front of a store. A pat-down in front of this group could have placed the undercover officer in a bad position, and he had every right to request backup from other officers for his personal safety. That request was made promptly after the officer observed the situation long enough to form a suspicion that criminal activity was occurring, and there is no evidence to show that backup officers unreasonably delayed in arriving to assist. On these facts, we cannot say that the defendant established a violation of R.C. 2935.03(D).
 B
The defendant next complains that there was no probable cause for the police to conduct the pat-down.
When deciding whether a temporary stop is permissible under Terry v.Ohio (1967), 392 U.S. 1, we look to see whether the police had a reasonable suspicion that criminal activity was occurring. See Illinoisv. Wardlow (2000), 528 U.S. 119, 123. The purpose of a Terry stop is not to accuse, but to investigate. Facts which might be given an innocent construction will support the decision to detain an individual momentarily for questioning, so long as one may rationally infer from the totality of the circumstances that the person may be involved in criminal activity. United States v. Cortez (1981), 449 U.S. 411, 417. An officer must be able to point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant that intrusion. State v. Bobo (1988), 37 Ohio St.3d 177.
We have consistently found a reasonable suspicion of criminal activity exists in cases where the accused engages in exchanges of money for small objects. See, e.g., State v. Ricks (Sept. 28, 2000), Cuyahoga App. No. 76670, unreported (suspects flagged down and approached cars, then appeared to be exchanging something for money); State v. Rogers (May 21, 1998), Cuyahoga App. Nos. 72736 and 72737, unreported (exiting car and "cupping" hands to show something, then exchanging money); State v.Streeter (July 2, 1992), Cuyahoga App. No. 62682 (same). Cf. State v.Barr (1993), 86 Ohio App.3d 227 (although not citing to Terry, police observed offender exchange what appeared to be money for drugs and found probable cause for arrest).
The defendant's citation to State v. Lockett (1999), 99 Ohio App.3d 81, is not on point. Lockett was standing on the street with two companions, drinking from an open beer. The police, thinking he might be drunk, ordered him into a squad car, and then searched him twice before finding a crack pipe. We held that these facts did not justify a reasonable suspicion that the defendant was committing or was about to commit a crime.
The difference between Lockett and this case is that the defendant's act of making several exchanges of an object for money in a short period of time had all the markings of drug transactions. The court did not err by finding that the totality of the circumstances permitted a reasonable suspicion that the defendant was engaging in criminal activity. TheTerry stop was justified.
 C
Finally, the defendant complains that an anonymous complaint of drug activity in the CMHA housing development was constitutionally inadequate.
The defendant did not make this argument to the court. Crim.R. 47 states that a motion "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." "In order to require a hearing on a motion to suppress evidence, the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." State v. Shindler (1994), 70 Ohio St.3d 54, syllabus (emphasis added). Because the motion itself gave no factual basis for any claim relating to the anonymous caller, the defendant waived the right to raise it on appeal. The first assignment of error is overruled.
 II
In his second assignment of error, the defendant complains that the search of his car which yielded the firearm was done without basis. He claims the car was lawfully parked and the arresting officers all agreed that he had nothing to do with the car while making drug sales.
In State v. Cook (2001), 143 Ohio App.3d 386, 389, we stated:
 The inventory exception to the warrant requirement of the Fourth Amendment permits the police to conduct a warrantless search to produce an inventory of the contents of an impounded vehicle. See South Dakota v. Opperman (1976), 428 U.S. 364, 376, 49 L.Ed. 2d 1000, 96 S.Ct. 3092; State v. Mesa (1999), 87 Ohio St.3d 105, 108-109, 717 N.E.2d 329. The rationale for excluding inventory searches from the warrant requirement is that inventory searches are an administrative or caretaking function, rather than an investigative function. South Dakota v. Opperman, 428 U.S. at 369, fn. 5.
 In State v. Hathman (1992), 65 Ohio St.3d 403, 604 N.E.2d 743, paragraph one of the syllabus states:
 "To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be established in good faith and in accordance with reasonable standardized procedure(s) or established routine." (Citations omitted.)
 Standardized procedures upon impoundment are required in order to insure that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. Florida v. Wells (1990), 495 U.S. 1, 4, 109 L.Ed.2d 1, 110 S.Ct. 1632.
The undercover officer testified that he had an inventory made of the contents of the defendant's vehicle pursuant to a CMHA policy. He explained that this policy was intended to secure the contents of a vehicle. Although the state did not offer the policy into evidence, we have held that "[t]estimony introducing standard policy procedures is sufficient to show lawful reasons for impoundment. Id. at 390, citingState v. Semenchuk (1997), 122 Ohio App.3d 30, 40.
Finally, even without a specific policy in place, the police were authorized to tow the vehicle for its safekeeping. Id. at 390-391. The undercover officer made this point specifically when he testified that had CMHA not towed the car, it "would have been stolen." Moreover, the defendant did not suggest that he had anyone nearby who could care for the vehicle, or otherwise remove to safety. Consequently, an inventory of the vehicle as part of its impoundment fell outside the warrant requirement. The second assignment of error is overruled.
 III
The third assignment of error complains that the defendant was denied his right of confrontation and cross-examination because the court would not permit the undercover officer to be impeached with prior inconsistent testimony.
The defendant's specific complaint is unclear. It appears that during the suppression hearing, the undercover officer testified that the complaint of drug activity said that a male matching the defendant's description had been dealing drugs from a Mercury Grand Marquis with temporary license tags. The following day, after trial commenced, defense counsel asked the undercover officer to admit that he had no identification of the vehicle when he received the information about drug activity. When the undercover officer claimed he did have vehicle identification information, defense counsel asked, "Didn't you just testify yesterday that you had * * * that someone was selling from a vehicle?" The court sustained the state's objection and instructed the jury to disregard the question.
Unfortunately, the defendant gives us no elucidation on why the court erred by refusing to permit this line of questioning. The best we can do is assume that the defendant wished to impeach the witness on a prior inconsistent statement made during the suppression hearing. That kind of impeachment would be permissible under Evid.R. 613(A), which permits impeachment on prior inconsistent statements. However, the undercover officer gave very similar descriptions of the information he received. At the suppression hearing he testified that the information consisted of:
 * * * a black male wearing black denim jeans with an orange and gray pullover was selling illegal narcotics from this vehicle and this vehicle was described as a Grand Marquis Mercury * * *.
During direct examination, the undercover officer said that he received the following information:
 * * * a black male with an orange and gray pullover with black denim jeans was dealing drugs from his vehicle which at that time had a 30-day tag, a Mercury Grand Marquis, I believe it was.
The defendant has merely cited two very brief passages from the transcript and cited several cases. He has made no specific argument as to how this cited case law relates to his claimed error, and we can see none. This constitutes a failure to exemplify the record. See App.R. 12(A)(2); State v. Stojetz (1999), 84 Ohio St.3d 452, 455. The passages set forth above would not appear to give any basis whatsoever for a good faith belief that the undercover officer had given a prior inconsistent statement, so the court did not err by sustaining the objection. The third assignment of error is overruled.
 IV
The fourth assignment of error is that the state engaged in improper cross-examination of the defendant's mother. The defendant's possession of nearly $1,300 in cash tended to bolster the state's theory that he had been dealing in drugs at the time of arrest. The defendant explained that he carried that much cash because he had recently won the lottery. In support of this, his mother testified that she purchased the winning lottery ticket for the defendant and the defense offered into evidence an IRS Form W-2G memorializing gambling winnings in the amount of $2,500. The Form W-2G showed the mother as the winner. During the mother's cross-examination, the state pointed out to the mother that the defendant's name, not hers, should have appeared on the Form W-2G if he had truly been the winner, and that by failing to be truthful when collecting the money, she might have opened herself up to a case of tax fraud.
Our review of this assignment is to determine whether the remarks were improper and whether they prejudiced the defendant. State v. Moore
(1998), 81 Ohio St.3d 22, 33, citing State v. Smith (1984),14 Ohio St.3d 13, 14. Prejudice exists when there is a reasonable probability that but for the prosecutor's improper remarks, the result of the proceeding would have been different. State v. Loza (1994),71 Ohio St.3d 61, 83.
The state appears to concede that it had no basis for suggesting that mother had engaged in tax fraud because its brief only argues that there was no prejudice. We agree with the defendant that the state's questions were improper, as mother purchased the lottery ticket and thus had the obligation to claim the ticket. See R.C. 3770.07(A)(1). She could certainly have purchased the lottery ticket and given the winnings to the defendant as a gift. The state's implication that she may have engaged in tax fraud by collecting the winnings was unfounded. Delving into inappropriate areas in an attempt to bolster the state's case has become the subject of review on a recurring basis.
Despite the error, we cannot say that there is a reasonable probability that but for the error, the result of trial would have been different. While the defendant gave one explanation of why he possessed such a large sum of money, the state validly suggested that the defendant's possession of such a large sum of money was consistent with drug trafficking. This would have jibed with the defendant's statement to the police that he sold a "couple of stones". So the jury had two equally plausible explanations for the defendant's possession of such a large sum of cash. It is highly unlikely that the state's mention of tax fraud so tipped the scales that it resulted in the defendant's conviction. The fourth assignment of error is overruled.
 V
For his fifth assignment of error, the defendant maintains that he was denied a fair trial because the court would not require the state to divulge the identity of the anonymous caller who reported that the defendant had been drug dealing.
When seeking disclosure of an informant's identity, the defendant bears the burden of establishing the need for disclosure. State v. Brown
(1992), 64 Ohio St.3d 649, 653. A need for disclosure of an informant's identity is established when "the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." Statev. Williams (1983), 4 Ohio St.3d 74, syllabus.
It is not clear from the record if the undercover officer knew the identity of the informant. During his cross-examination in the suppression hearing, the undercover officer said he personally received a telephone call from a "CRI": an acronym used for a "confidential reliable informant." The undercover officer said "Well, my CRI is anonymous to me. He then contradicted that statement by saying, "I know who my CRI is, sir." At that point, the court sustained the state's objection ruling that there was no need to indicate the informant's name on the record.
Despite this confusion over the informant's identity, the defendant failed to establish that the informant's identity was "vital" to his defense. The informant merely tipped the undercover officer to possible drug activity. The undercover officer then independently verified this drug activity several times over before conducting a Terry stop. Divulging the identity of the informant would have had no effect at all on the undercover officer's testimony that he personally witnessed what appeared to be drug sales and independently formed a reasonable suspicion that criminal activity was taking place. The fifth assignment of error is overruled.
 VI
The sixth assignment of error is an adjunct of the fifth assignment of error. The defendant argues that he was denied a fair trial when the court told the jury "you are instructed that the identity of a confidential reliable informant, in order for them to remain in effect in that role as confidential reliable informants, must be kept secret." The defendant complains that the court's use of the word "reliable" when used to refer to the informant amounted to an improper opinion because it may have led the jury to believe that the informant should be believed.
The use of the phrase "confidential reliable informant" has been a misnomer throughout this case. When trying to show probable cause sufficient to obtain a search warrant, the police must vouch for the accuracy of the information contained in the warrant application. That information often comes from an informant, and the police have resorted to the phrase confidential reliable informant "to describe someone whose information, in the past, had proven reliable." United States v. Alle
(C.A.8, 1998), 160 F.3d 1222, 1223.
Nothing in this case suggests that the undercover officer used an informant in the sense typically employed by the courts. In State v.Poling (Feb. 21, 1992), Hocking App. No. 91CA5, unreported, the court gave the following definition of an informant:
 Anyone who gives information to the police might be termed an informant. But the courts have interpreted the word "informant" much more narrowly, using it to describe an anonymous tipster or "a person in the underworld or a person on its periphery; in its confidence, or so much `a part of the scenery' to the criminal that this person is in a particularly good position to know the story of a crime committed, the story of criminal business done, being transacted or proposed for the future; or at least he gets significant bits of information which, when placed in context by the investigator, will demonstrate an accurate picture of crime." (Footnote omitted.) 1 LaFave, Search and Seizure (1987) 611, Section 3.3.
 Contrast the informant as defined above with the "average citizen who by happenstance finds himself in the position of a victim of or a witness to criminal conduct and thereafter relates to the police what he knows as a matter of civic duty. One who qualifies as the latter type of individual, sometimes referred to as a "citizen-informer," is more deserving of a presumption of reliability than the informant from the criminal milieu. As Justice Harlan pointed out in United States v. Harris
[(1971), 403 U.S. 573], the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis. "The [*7] latter is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals." (Footnotes omitted.) LaFave, supra. Indeed, the police are entitled to assume the veracity of the alleged victim or witness (absent special circumstances which should put them on guard). 3 LaFave, Search and Seizure (1987) 460, Section 9.3(d). Thus, Deputy Fortner was entitled to assume the veracity and reliability of the victim of the alleged acts of voyeurism.
As we pointed out earlier, there was some doubt whether the undercover officer actually knew the identity of the person reporting the defendant's drug dealing. But whether the officer knew the informant's identity or not, the information obtained from the informant was simply used to alert the undercover officer to the possibility that criminal activity might be occurring. The undercover officer did not rely on this information to make an arrest or have a warrant issued, but instead positioned himself at the scene and spent a minimum of twenty minutes observing the defendant engage in drug activity before deciding to make aTerry stop. Because the police independently verified the information they received, the reliability of the informant had no actual bearing on the case.
Finally, although it might be the better practice for the courts to avoid using the term "reliable" when speaking to the jury about informants, there is no possibility that the jury took the court's use of the term "reliable" as indicating the court's opinion that the informant was, in fact, reliable. Read in context, the court's instruction to the jury was made for the sole purpose of protecting the informant's anonymity. And even if we could somehow construe the court's use of the word "reliable" as being potentially damaging, we could find no prejudicial error because it could not have bolstered the credibility of the informant beyond that already established by the evidence. The informant gave a very accurate description of the defendant, a fact that defense counsel apparently conceded during his closing remarks when he said, "[h]e [the undercover officer] testified he got this call to come there concerning a clothing description, although the clothing description that he gave jives [sic.] up very closely to what Mr. Jones was wearing * * *." Moreover, the informant gave a very accurate description of the defendant's vehicle, including the make and model. Under these circumstances, the jury could not have given the evidence any greater weight because of the court's unfortunate use of the word "reliable." The sixth assignment of error is overruled.
 VII
The seventh assignment of error maintains that we should look to the cumulative nature of the errors occurring at trial and find that they collectively denied the right to a fair trial. The defendant argues that the court allowed the undercover officer to testify to "all sorts" of improper and prejudicial matters, although he only mentions three instances: (a) that the undercover officer testified that he received a complaint that a black male was selling drugs from his vehicle, (b) that his trial testimony contradicted his testimony in the suppression hearing, and (c) that he went into a "dissertation concerning drugs and how they are handled."
Other than setting forth this claimed error, the defendant does not explain why it was objectionable for the undercover officer to say that he received a complaint that a black male was selling drugs from his vehicle. For this reason alone, we can summarily reject this argument because it is not separately argued in the brief as required by App.R. 16(A). See, also, App.R. 12(A)(2).
Even if we do consider the argument on its merits, the only basis for objection that we can discern would be on hearsay grounds. But an objection on hearsay grounds would not be a good one, as statements showing what prompted police to undertake investigations are not considered hearsay. State v. Blevins (1987), 36 Ohio App.3d 147, 149;State v. Dumars (Apr. 12, 2001), Cuyahoga App. No. 78075, unreported.
The defendant's complaint that the undercover officer's testimony at trial contradicted his suppression hearing testimony is likewise not independently argued and we will summarily reject it. However, we note that it is not "error" for a witness to be inconsistent, for that inconsistency, without more, cannot be shown to be the fault of either the court or the state. Witnesses often testify inconsistently, and those inconsistencies are fertile grounds for impeachment under Evid.R. 613(A). The defendant took advantage of some prior inconsistent statements for impeachment purposes, exploiting them for his own benefit at trial. The undercover officer's inconsistent statements cannot be considered error.
Finally, the defendant complains that the court permitted the undercover officer to give a dissertation on why he believed certain facts tended to show that the defendant had been engaged in a drug transaction. The undercover officer pointed to the money recovered from the defendant and how it had been folded; that drug dealers often used pagers and cell phones to facilitate drug transactions; and that the officer testified that in his experience, persons approaching another person who reaches inside his coat and exchanges an object for cash is likely dealing drugs.
The defendant did not object to any of this evidence, so unless it rises to the level of plain error; that is, unless it can be said that but for the error, the outcome would clearly have been otherwise, we cannot reverse. State v. Nicholas (1993), 66 Ohio St.3d 431, 436.
Because some police officers, like the undercover officer in this case, make thousands of drug arrests, they bring a great deal of experience to a case. The courts generally permit the police to explain why they believe that certain actions by an accused constituted drug trafficking. In State v. Barnett (Sept. 22, 1992), Franklin App. No. 92AP-354, unreported, the Tenth District stated:
 * * * [A] police officer is permitted to testify concerning his own expertise as to the behavioral and language patterns of people commonly observed on the streets, including people associated with criminal activities, in a manner helpful for the jury's clear understanding of the factual issues involved. * * *
Likewise, in State v. Hines (Aug. 23, 2001), Cuyahoga App. No. 79908, unreported, we credited testimony by police officers who claimed that a large amount of cash found on an alleged dealer, and the manner in which the money had been crumpled, was consistent with drug dealing.
By giving explanations as to why certain conduct by the defendant roused his suspicions that drug activity was occurring, the officer was able to articulate to the jury his reasons for believing that the defendant had been selling drugs. So the officer's testimony served to refute the defendant's denial that he had been engaging in drug activity. This testimony did not rise to the level of plain error. The seventh assignment of error is overruled.
 VIII
In the eighth assignment of error, the defendant complains that the state engaged in misconduct by (a) repeatedly expressing an opinion of the defendant's guilt during closing argument, (2) speculating that the defendant had been selling crack cocaine, and (3) arousing the jury's passion in a manner calculated to obtain a conviction.
 A
When the state is accused of engaging in misconduct during closing argument, we look to see whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. State v. Smith (1984), 14 Ohio St.3d 13, 14. Above all, we focus on the fairness of the trial and not the culpability of the state, and when the alleged misconduct arises during closing argument, we examine the closing argument as a whole. State v. Smith (2000), 87 Ohio St.3d 424,442; State v. Moritz (1980), 63 Ohio St.2d 150, 157-158. Both the defense and prosecution are given wide latitude in their arguments "as to what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Tumbleson (1995), 105 Ohio App.3d 693, 699, quotingState v. Lott (1990), 51 Ohio St.3d 160, 165.
 B 1
The defendant first complains of the following portions of the state's closing argument:
 He knowingly acquired, had, carried or used a firearm. The other part of having a weapon under disability is that he has a prior drug felony conviction. That is what is called a disability. Remember when we talked about this in voir dire? Sometimes the law — you never heard of this. Now you have. That's called a disability for the purpose of the law.
 His prior felony drug conviction means that he can't carry a gun anymore and that's obvious as to why. He is guilty of all of those in Count 1.
* * *
 Count Number 2, possession of drugs. The rock of crack he had in his hand when he was going to get handcuffed. He knowingly obtained, possessed or used crack cocaine in an amount less than one gram. He had that in his hand.
* * *
 It [the cocaine] comes back and there has been a stipulation and the Judge will tell you what a stipulation means. It means that both sides agree. That means the defense and the Prosecutor stipulated to this lab report that this tested positive for what are a couple of pieces of off-white rocklike material, analyzed and found positive for cocaine. This is cocaine in its rock form and he is guilty of Count 2.
When delivering closing argument, a prosecuting attorney should not express an opinion that an accused is guilty. State v. Lott (1990),51 Ohio St.3d 160, 165. In both instances cited by the defendant, the state did express an opinion that the defendant should be found guilty of the respective offenses. The court should have sustained the defendant's objections. Moreover, the state needs to be reminded that at the same time it seeks conviction it has a duty to protect and ensure the rights of the defendant. In recent times, too many complaints are being raised couched in prosecutorial misconduct. This court takes a dim view of tactics employed to press the envelope. Forewarned is forearmed.
 2
The defendant next complains that the state improperly told the jury that he had been selling crack cocaine. He claims there is no evidence to support this argument.
While the defendant was not charged with selling crack cocaine, the evidence presented by the police certainly lent itself to that conclusion. He had been seen engaging in conduct that the police believed to be consistent with someone selling drugs. He carried a large amount of cash and a pager, and also admitted to the police that he had sold some rocks of crack cocaine. On the whole, we cannot say that this statement was erroneous.
 3
In his third allegation of misconduct, the defendant says that the state unfairly appealed to the passion and prejudice of the jury when it said the following:
 This justice system takes a lot of abuse and a lot of it is warranted and it should be criticized because that is what makes it better, but one thing, it is the best system in the world. There is no doubt in my mind and for me it is because of one reason, because no matter how much evidence you have against you, you have a right to a trial.
 You have a right to tell the State of Ohio to produce witnesses that are saying, "I am guilty of that." So that is what we did. We brought in a detective.
 We brought in a patrol officer. We got the gun, the drugs, the lab report, and we gave the defendant his day in court and now it is time for him to face justice, for him to accept responsibility.
We find nothing improper within these remarks. The defendant claims the quoted passage "attempted to arouse the passion and prejudice of the jury and convict the defendant on general principle." It does nothing of the kind. The argument specifically references the evidence produced at trial and argues for a conviction on that basis.
Moreover, we fail to discern how the defendant can claim this argument "exceeded all bounds of propriety." We believe this part of the argument fell within what is considered acceptable closing argument.
 C
Given that there was one instance of misconduct in the state's closing argument, we must consider whether that instance prejudicially affected the defendant's substantial rights. Having considered the closing argument in its entirety, we find the two instances where the state offered its opinion that the defendant was guilty did not result in substantial prejudice. We see no meaningful chance that the outcome of trial would have been different had the court sustained objections during closing argument. The eighth assignment of error is overruled.
 IX
In his ninth assignment of error, the defendant claims the court erred by twice precluding him from arguing reasonable inferences from the evidence.
The first claimed instance of error came during the defendant's closing argument when counsel tried to argue against the informant's credibility. He said:
 He testified he got this call to come there concerning a clothing description, although the clothing description that he gave jives [sic.] up very closely to what Mr. Jones was wearing and Mr. Jones was there for a longer period of time. He was out on the sidewalk.
 No name was given to the officer to, "Go seek Vernon Paul over there," or "Go seek Joe Jones," or any name whatsoever from his alleged confidential informant who supposedly, if he were that good, that reliable, would know who it was that was supposedly out there selling the drugs.
Mr. SUMMERS: Objection.
 THE COURT: Sustained. Ladies and gentlemen, you are instructed that the identity of a confidential reliable informant, in order for them to remain effective in that role as a confidential reliable informant, must be kept secret.
 Therefore, you are instructed to disregard the comment and it is stricken from the record.
MR. MANCINO: My comment was that the —
THE COURT: Thank you, counselor. Please continue.
 MR. MANCINO: If the informant told Officer Ramsey —
MR. KEIM: Objection.
 THE COURT: Counselor, sustained. The jury is instructed to disregard that.
Counsel's argument only tried to ascertain why the informant could give such an accurate description of the defendant but could not name him. On its face, the question did not delve into the identity of the informant, and the court's decision to instruct the jury on the confidentiality of the informant was a non sequitur. The court erred by sustaining the objection.
On the whole, we fail to show this argument would have had any persuasive effect on the jury. Counsel seemed to assume that only a person who knew the defendant could have given such an admittedly accurate description. But that kind of argument ignores the reality that many people are fully capable of giving accurate descriptions of persons they have never met. By his own admission, the defendant had been present at the scene for some time, and a CMHA resident could have looked out a window and gave the police a description at the same time. Perhaps a desperate case calls for a desperate argument. Regardless, we see no possibility that had the defense been permitted to continue with this line of argument, the defendant would not have been convicted. The ninth assignment of error is overruled.
 X
The tenth assignment of error is that the court erred by denying the defendant's motion for judgment of acquittal on the weapon charge. He claims the state failed to prove that he acquired, used or possessed the weapon and also failed to prove the operability of the weapon found in the car.
 A
The court shall not grant a Crim.R. 29(A) motion for judgment of acquittal if the evidence is such that after construing the evidence in a light most favorable to the state, reasonable minds could reach different conclusions as to whether each element of a charged offense has been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
R.C. 2923.13(A) says that no person who has previously been convicted of a felony offense of violence shall knowingly "acquire, have, carry, or use any firearm or dangerous ordnance." The police found a firearm under the front passenger seat of the defendant's car. The defendant claims there was no testimony that he had been in the car during any time during the undercover officer's surveillance before initiating the Terry stop, so the state failed to prove that he "possessed" the firearm in a manner sufficient to establish his guilt.
There are two kinds of possession: actual and constructive. The circumstances forming actual possession are obvious and require no further elaboration. "Constructive" possession exists when the person exercises dominion or control over the firearm, even though the firearm may not be in that person's actual possession. State v. Messer (1995),107 Ohio App.3d 51.
We considered a similar fact pattern to find constructive possession of a firearm in State v. Franklin (July 27, 1989), Cuyahoga App. Nos. 55604 and 55684, unreported. Franklin had been spotted by a patrolling police officer beating another woman as he stood beside a blue van. After being arrested, the defendant denied ownership of the van. The police looked into the van's window and saw a shotgun laying on the front seat. Keys found on the defendant operated the van. Based on this evidence, we said that despite the the defendant's denial of ownership of the van, he was the record owner of the van, possessed keys that fit the van, and was in very close proximity to the van when the police arrived to stop the beating. These facts permitted a finding that he constructively possessed the shotgun found in the van.
Construing the evidence in a light most favorable to the state shows that the defendant admitted he owned the car. He likewise did not deny that he had driven the car to the scene, and was standing "twenty feet, if that" from the car at the time he was patted-down. The police found the defendant carrying the car keys. The car had been locked and the keys were used to open the car.
It is true that the defendant presented some testimony to show that another person who allegedly owned the gun had access to the defendant's car, but that testimony is not dispositive. The defense witness who testified to that fact gave implausible testimony on which reasonable minds could have differed. At the very least, he identified the handgun offered by "Rob" as being a .32 caliber, while the police identified the gun recovered from the car as a .38 caliber. This difference in fact alone created enough difference of fact for the court to deny the motion for judgment of acquittal. We find the circumstances sufficiently established the defendant's dominion and control over the vehicle, and hence his connection to the handgun, so that the court did not err by denying the motion for judgment of acquittal on the weapons under disability charge.
 B
The defendant's next argument is that the state failed to show the operability of the handgun.
A "firearm" is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." See R.C. 2923.11(B)(1). The statutory definition also says that a firearm may be unloaded or inoperable as long as it is readily rendered operable. Id. When determining whether a firearm is operable, the trier of fact can rely upon circumstantial evidence, including but not limited to, "the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). Circumstantial evidence of the kind necessary to prove operability can take the form of testimony from lay witnesses who observed the firearm and the circumstances giving rise to firearm's use. See State v. Murphy
(1990), 49 Ohio St.3d 206, syllabus.
The state offered the handgun into evidence, and the court indicated in its charge that the jury would have "all of the evidence." Since the jury had an actual weapon before it and could consider on its own the operability of the firearm, this constitutes the best kind of evidence of operability. State v. Messer (1995), 107 Ohio App.3d 51, 55. The tenth assignment of error is overruled.
 XI
In his eleventh assignment of error, the defendant complains that the court erred by denying his motion for judgment of acquittal as there was no evidence that the substance constituted crack cocaine. He claims the substance admitted into evidence was a "crumbled piece of off-white rock" that was analyzed and found to test positive for "cocaine," but not "crack" cocaine.
The defendant clearly does not contest that the substance tested was found to be cocaine. His only complaint is that the cocaine admitted into evidence was in such a crushed form that it could not constitute "crack" for purposes of the drug law. However, the police officers gave testimony that the cocaine they recovered was in rock form, and explained that it may have been crushed while being tested or otherwise handled. This corresponded to the seizure of the cocaine, as it would have been fairly impossible for the officers to seize cocaine in a powdered form from the defendant's clenched fist. This was sufficient evidence to show that cocaine had been in rock form at the time of the defendant's arrest. The eleventh assignment of error is overruled.
 XII
The twelfth assignment of error maintains that the court punished the defendant for choosing to go forward with trial instead of taking a plea bargain. The defendant maintains that during plea negotiations the court told him that if he would plead guilty to having a weapon while under a disability and preparation of drugs for sale, it would overlook his extensive record and sentence him to concurrent six month sentences. After trial, the court sentenced the defendant to three consecutive sentences amounting to thirty-six months.
The court cannot punish an accused for rejecting an offered plea bargain and electing to proceed to trial. State v. O'Dell (1989),45 Ohio St.3d 140, paragraph two of the syllabus. To determine vindictiveness, we look to see whether the record affirmatively shows retaliation as a result of the rejected plea bargain. State v. Warren
(1998), 125 Ohio App.3d 298, 307.
Vindictiveness is one thing; imposing a sentence greater than that discussed in plea negotiations is another thing. When an accused rejects the offer of a plea bargain, elects to exercise the right to trial, and is found guilty, the court is not required to impose sentence within the parameters discussed in the rejected plea bargain. The incentive within a plea bargain is a reduced sentence in exchange for avoiding the time and expense of trial. Santobello v. New York (1971), 404 U.S. 257, 260. It would be counterintuitive to think that the court is somehow bound to the sentence limits discussed in the plea negotiations, even though it had been rejected by the accused.
A plea agreement "is contractual in nature and subject to contract law standards." State v. Butts (1996), 112 Ohio App.3d 683, 685-686. The defendant seeks to demonstrate vindictiveness solely by virtue of the court's sentence. In essence, he appears to be arguing that we should make binding that which he rejected. The court clearly indicated that it would take the defendant's "extensive criminal history" into consideration were he to reject the plea bargain. The court's use of the word "extensive" may have understated the point. In any event, the court was good to its word and did consider his record. The defendant cannot have it both ways. He has utterly failed to produce one shred of evidence in the record to support his claim of vindictiveness. The twelfth assignment of error is overruled.
 XIII
It appears that the thirteenth assignment of error complains of two things: that the court's maximum sentences were contrary to sentences discussed during plea negotiation and the court erred by imposing consecutive sentences on all counts. We rejected the argument that the court could not impose a greater sentence than that offered in plea negotiations in our resolution of the twelfth assignment of error. Nothing more need be said on that point.
The only discussion in the defendant's merit brief on the issue of consecutive sentences is this passage:
 This court has ruled that where consecutive sentences are imposed "that merely reciting or tracking the statutory language in R.C. 2929.14 is not sufficient to comply with the mandate set forth in R.C. 2929.19(B)(2)(6) to provide a reason for the consecutive sentence. State v. Grider, Case No. 78370 (June 7, 2001).
This "argument" wholly fails to comply with App.R. 16(A)(7) which requires an argument in support of the assignment of error "and the reasons in support of the contentions." We do not consider a one-sentence quotation from authority to be sufficient under these circumstances to count as reasons in support of the contentions. The defendant gives us no meaningful clue as to exactly why the court erred by imposing consecutive sentences, and we can glean none from the record. We summarily overruled the thirteenth assignment of error.
 XIV
The fourteenth assignment of error complains that the court erred by ordering a summary forfeiture of the defendant's cash, cell phone, pager and gun that were seized following his arrest. He claims he did not receive notice and an opportunity to be heard on the issue, although we must note that the defendant's sole objection at trial to the forfeiture was that he believed the jury, not the court, had to decide the issue.
The state sought forfeiture under R.C. 2933.42(A), which forbids any person from possessing contraband. Contraband is defined by R.C.2901.01(A)(13)(e) as any controlled substance or "any device, paraphernalia, money * * *" that is used or intended to be used in an attempt to violate the drug laws. The prosecuting attorney is required to file a petition for the forfeiture and the court must hold a hearing on the forfeiture within forty-five days of the conviction. See R.C.2933.43(C).
The defendant's sole objection at trial was that the jury, not the court, should have made the forfeiture determination. R.C. 2933.43(C) clearly states that the court shall hold the forfeiture hearing. The use of the word "hearing" necessarily suggests a procedure less formal than a jury trial. King v. Mohre (1986), 32 Ohio App.3d 56, 57. We find no error in the court proceeding to make the forfeiture determination.
We would also add that the defendant had no evidence to offer, nor did he make any argument that the state could not fulfill the statutory bases for obtaining forfeiture. Our review of the record convinces us that the court did not err by ordering forfeiture. The fourteenth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and ANN DYKE, J., CONCUR.